## In re BISSINGER CO.

(District Court, N. D. Ohio, E. D.   May 16, 1925.)

No. 8306.

1. **Bankruptcy** ⬤⟹318(4)—**Proceedings are anticipatory breach of executory contract, lease to bankrupt, relative to provable claim.**

Bankruptcy proceedings amount to an anticipatory breach of bankrupt's executory contract, giving right to have the damages liquidated and proved against the estate, nothing in the conduct of the parties or the terms of the contract precluding it; and this though it is a lease of real estate to bankrupt, the trustee electing not to assume the lease, and the lessor doing nothing to forfeit it under its clause authorizing it for default of lessee, and taking no steps to re-enter or repossess the property.

2. **Bankruptcy** ⬤⟹316(2)—**Claim for anticipatory breach of lease held not contingent, but provable.**

Lease to bankrupt giving him no option to terminate it at any time or under any condition, but he being bound to pay the rent over the entire period, without regard to continued occupancy, so that it is a fixed liability, claim for damages for the anticipatory breach, by reason of the bankruptcy proceedings, is not contingent, but provable.

In Bankruptcy. In the matter of the Bessinger Company, bankrupt. On exceptions to the report of the special master on liquidation of the claim of the Twenty-First Street Realty Company. Exceptions overruled.

The report of the Special Master follows:

"This matter is before me upon liquidation of the claim of the Twenty-First Street Realty Company and the objection of the trustee to the allowance thereof.

"The Twenty-First Street Realty Company, hereafter called claimant, pursuant to an order of liquidation made by the district judge, filed its claim against the bankrupt herein.

"The claim is based upon breach by reason of bankruptcy of a lease between claimant and bankrupt.

"The trustee objects to consideration of the claim primarily on the ground that the claim is not provable; in other words, that it is contingent and not subject to liquidation.

"Claimant asks for $34,600; alleges that the claim arises out of a lease which for three years beginning October 1, 1922, provided for payment of a rental of $17,000 the year; for five years beginning October 1, 1925, provided for payment of rental of $17,500 the year. It further alleges that owing to the bankruptcy and winding up of bankrupt, it will be unable to rent the premises for more than $13,300 the year for the entire remainder of the term, thus losing for the first three years $11,100 and for the next five years $23,500 (should probably be $21,000), making a total of $34,600 which it will lose in rental.

"There seems to me to be no question but that the claimant does in fact, as it intended no doubt to do, claim $34,600 damages because of the breach alleged.

"The lease, as appears from the copy attached to the proof, was made September 30, 1920, covering premises to be used only for commercial and garage purposes. The date of expiration stipulated was September 30, 1930. The Bissinger Company 1½, seventeen thousand five hundred dollars ($17,500), was paid to lessor as advanced payment to be applied in reduction of rental for the tenth year, and, further, 6 per cent. thereon was to be computed and applied yearly as payments upon the rental.

"There was a covenant against assignment, but no clause providing for forfeiture by bankruptcy.

"The only other provision in the lease pertinent to this hearing is the following:

"'It is further expressly agreed between the parties hereto that if default be made in the payment of the rent above reserved or any part thereof, at the time when the same shall become due and payable, or if lessee shall make default in any of the covenants and agreements herein contained to be kept by the said lessee, the lessor may, after thirty (30) days' written notice to said lessee, and unless lessee makes good such default within said thirty (30) days, terminate said lease and re-enter the said premises, and remove all persons and property therefrom, using such force as may be necessary, and sue for and recover all rent due at the rate aforesaid up to the time of such entry and the remainder of the term hereof, together with all amounts paid as advanced rent, shall be forfeited to the lessor as liquidated damages. Every demand for rent made after it falls due shall have the same effect in law as if made on the day and at the time it falls due, any law of the land to the contrary notwithstanding, and no waiver of any such default shall have the effect of excusing any such subsequent default.'

"Upon bankruptcy the trustee for a time occupied the premises, but did not adopt the lease; it was abandoned as not a valuable asset.

"The claimant did nothing to forfeit the lease; it was entirely inactive until the lease was abandoned by the trustee.

"The trustee objects, first, that the claim is precluded by the terms of the lease; that is, he claims that the provision for liquidated damages in the lease controls the amount recoverable as damages.

"It seems to me quite plain that the provision, 'the remainder of the term together with all amounts paid as advanced rent shall be forfeited to lessor as liquidated damages,' applies only when the lessor exercises his option 'to terminate said lease and reenter the said premises.' As stated before, the lessor took no steps to terminate the lease or to re-enter.

"The trustee's second objection is that 'claims for future installments of rent or for damages for reduced rental value of leased property are contingent and not provable.'

"At the outset it should be stated the cases upon this question are in hopeless conflict. It is true, however, that the confusion is to some extent more apparent than real. The decision in every case necessarily depends upon the provisions of the lease considered. As these are varied, every case should be examined with special observance of the lease therein considered.

"There is practical unanimity in the cases that future rent, as rent, is not provable. Since future rent, as a rule, in the absence of a clause of acceleration, is not due at the date of bankruptcy nor becomes due by reason of the bankruptcy, it does not fall within the requirement of section 63a (Comp. St. § 9647), a fixed liability—absolutely owing at the time of filing the petition whether then payable or not; although it is a claim founded on contract. In re Mullings Clothing Co., 238 F. 58, 151 C. C. A. 134, L. R. A. 1918A, 539, 38 Am. Bankr. Rep. 189 (2 C. C. A. 1916); 2 Remington on Bankruptcy, § 793.

"The question of acceleration of the rent, i. e. making the amount due for the balance of the term payable upon bankruptcy, is not involved in this case. There would seem to be no reason why such claim should not be provable except where the lessor, in addition, by virtue of the provisions of the lease, claims forfeiture of the lease in which case it would be regarded as a penalty and not allowable. See In re Miller Bros. Grocery Co. (6 C. C. A.) 219 F. 851, 135 C. C. A. 521, L. R. A. 1916B, 1099, Ann. Cas. 1916A, 946, 33 Am. Bankr. Rep. 704. (In this case, involving lease of cash carrier system, lessor took possession of the property and claim rent. Court denied it on ground of failure of consideration.) See In re Mer-

win & Willoughby Co. (D. C. N. Y.) 30 Am. Bankr. Rep. 485.

"The trustee cites a number of cases that support his contention, but he cites no case, and I can find none, involving the precise question decided since the Supreme Court's decision in Central Trust Co. v. Auditorium Association, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, 36 Am. Bankr. Rep. 679 (April, 1916).

"In this case the Supreme Court established the principle that damages for anticipatory breach of a contract constitutes a provable claim in bankruptcy. Also, that a voluntary or involuntary bankruptcy is the equivalent of an anticipatory breach of an executory contract, and while debts provable under section 63 a (4) include only such as existed at the filing of the petition, damages for breach of contract wrought by filing of a bankruptcy petition constitute an existing debt within the meaning of the rule.

"Since it may become necessary to examine the reasons given in the cases supporting the trustee, it will be well to quote quite fully from the Auditorium Association Case, which was decided thereafter.

"In that case, an involuntary petition followed by adjudication was filed against a transfer company. At the time, the transfer company had a contract with the Auditorium Association under which the Auditorium Association had, for a term of five years, granted to the transfer company the baggage and livery business of the Auditorium Hotel. The transfer company was to pay the association in monthly installments the sum of $350 for the privilege during the term. The Auditorium Association reserved the right to revoke the privilege by six months' notice. The association also had the option, upon 30 days' default in payment, to terminate the contract without relieving the transfer company from liability.

"At bankruptcy there had been no default. The trustee did not elect to assume the contract, and the association made a contract with another for $234.69 the month and filed its claim for $311.20 due prior to bankruptcy and $6,226.74 as unliquidated damages for breach by reason of bankruptcy.

"In its opinion the court says:

"'It is no longer open to question in this court that, as a rule, where a party bound by an executory contract repudiates his obligations or disables himself from performing them before the time for performance, the promisee has the option to treat the contract as ended, so far as further perform-

ance is concerned, and maintain an action at once for the damages occasioned by such anticipatory breach. The rules has its exceptions, but none that now concerns us. Roehm v. Horst, 178 U. S. 1, 18, 19. And see O'Neill v. Supreme Council, 70 N. J. L. 410, 412. There is no doubt that the same rule must be applied where a similar repudiation or disablement occurs during performance. Whether the intervention of bankruptcy constitutes such a breach and gives rise to a claim provable in the bankruptcy proceedings is a question not covered by any previous decision of this court, and upon which the other federal courts are in conflict. * * *

" 'The contract with which we have to deal was not a contract of personal service simply, but was of such a nature as evidently to require a considerable amount of capital, in the shape of equipment, etc., for its proper performance by the transfer company. The immediate effect of bankruptcy was to strip the company of its assets, and thus disable it from performing. It may be conceded that the contract was assignable, and passed to the trustee under section 70a, to the extent that it had an option to perform it in the place of the bankrupt (see Sparhawk v. Yerkes, 142 U. S. 1, 13; Sunflower Oil Company v. Wilson, 142 U. S. 313, 322); for although there was a stipulation against assignment without consent of the Auditorium Association, it may be assumed that this did not prevent an assignment by operation of law. Still, the trustee in bankruptcy did not elect to assume performance, and so the matter is left as if the law had conferred no such election.

" ' *   *   *  Commercial credits are, to a large extent, based upon the reasonable expectation that pending contracts of acknowledged validity will be performed in due course; and the same principle that entitles the promisee to continued willingness entitles him to continued ability on the part of the promisor. In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement. It is the purpose of the Bankruptcy Act, generally speaking, to permit all creditors to share in the distribution of the assets of the bankrupt, and to leave the honest debtor thereafter free from liability upon previous obligations. Williams v. U. S. Fidelity Co., 236 U. S. 549, 554, 34 Am. B. R. 181. Executory agreements play so important a part in the commercial world that it would lead to most unfortunate results if, by interpreting the Act in a narrow sense, persons entitled to performance of such agreements on the part of bankrupts were excluded from participation in bankrupt estates, while the bankrupts themselves, as a necessary corollary, were left still subject to action for nonperformance in the future, although without the property or credit often necessary to enable them to perform. We conclude that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement, within the doctrine of Roehm v. Horst, supra.

" 'The claim for damages by reason of such a breach is "founded upon a contract, express or implied," within the meaning of section 63a4, and the damages may be liquidated under section 63b. F. L. Grant Shoe Co. v. Laird, 212 U. S. 445, 448, 21 Am. B. R. 484, 29 Sup. Ct. 332, 53 L. Ed. 591. It is true that in Zavelo v. Reeves, 227 U. S. 625, 631, 29 Am. B. R. 493, 33 Sup. Ct. 365, we held that the debts provable under section 63a4 include only such as existed at the time of the filing of the petition. But we agree with what was said in Ex parte Pollard, 2 Low. 411, Fed. Cas. No. 11,252, that it would be "an unnecessary and false nicety" to hold that because it was the act of filing the petition that wrought the breach, therefore there was no breach at the time of the petition. As was held by the same learned judge in Re Pettingill & Co. (D. C. Mass.) 14 Am. B. R. 728, 137 F. 143, 147:

" ' "The test of provability under the act of 1898 may be stated thus: If the bankrupt, at the time of bankruptcy, by disenabling himself from performing the contract in question, and by repudiating its obligation, could give the proving creditor the right to maintain at once a suit in which damages could be assessed at law or in equity, then the creditor can prove in bankruptcy on the ground that bankruptcy is the equivalent of disenablement and repudiation. For the assessment of damages proceedings may be directed by the court under section 63b (30 Stat. 562)."

" ' *   *   *  Of course, he could not be released unless the debt was provable. We therefore conclude that the Circuit Court of Appeals was correct in holding that the intervention of bankruptcy constituted such a breach of the contract in question as enti-

tled the Auditorium Association to prove its claim.'

"The reasoning of the court seems to me clearly applicable to a contract of lease of real property.

"In the instant case, as in the Auditorium Case, there was no breach prior to bankruptcy; bankrupt had done nothing that could be construed as a violation, breach, or repudiation. As a corporatic entity, it survived the bankruptcy. It might, after petition filed, have obtained further capital, and proceeded to do business, in which event it might have had use for the premises covered by the lease. But in the words of the Supreme Court: 'The same principle that entitles the promisee to continued willingness entitles him to continued ability on the part of the promisor. In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance.'

"I can see no distinction between a contract such as the one considered in the Auditorium Case and a lease such as in the instant case, as to the applicability of the reasoning of the Supreme Court. In both contracts the bankrupt agreed to pay something. If bankruptcy was a disablement from paying for a transfer privilege, why isn't it also a disablement from paying rent? Calling a payment required to be made 'rent' certainly establishes no difference.

"In short, it seems to me to follow from the pronouncement of the Supreme Court in the Auditorium Case that bankruptcy is an anticipatory breach of every executory contract in which the bankrupt is obligated to pay something or deliver property in the future. Bankruptcy in such case is a repudiation of all financial obligations giving rise to a cause of action as upon anticipatory breach.

"It is now quite well settled that bankruptcy of an employer constitutes breach of an employment contract, permitting the employee to prove his claim against the bankrupt estate for damages for wrongful discharge, in which he may recover, as damages, future services less an allowance for the reasonable value of his prospective earnings elsewhere. Collier on Bankruptcy (13th Ed.) p. 1411, and cases there cited pro and contra.

"It is to be noted that Collier states that since the decision in the Auditorium Case, necessarily the employee may prove such claim.

"There are a number of cases, all decided prior to Central Trust Co. v. Auditorium Association, which hold that bankruptcy is not an anticipatory breach of a lease of realty. Among them are Watson v. Merrill (8 C. C. A.) 136 F. 359, 69 C. C. A. 185, 69 L. R. A. 719, 14 Am. Bankr. Rep. 453; Re Roth & Appel (2 C. C. A.) 181 F. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270, 24 Am. Bankr. Rep. 588; Colman Co. v. Withoft (9 C. C. A.) 195 F. 250, 115 C. C. A. 222, 28 Am. Bankr. Rep. 328.

"In Watson v. Merrill the claim was for damages for breach of lease of realty by reason of bankruptcy. After the petition was filed, lessor and lessee (bankrupt) in writing released each other; the lessee from rent except the sum of $2,300 which was the amount claimed as damages. Apparently, the trustee abandoned the lease. The court denied the claim for several reasons, among them: That the claim was in realty for rent; that, since the lease contained no covenant that rent was to be paid after default and re-entry, the lessor's resumption of the premises constituted a termination of the lease and a release of the lessee from payment of future rent; that if entitled to damages, that amount was contingent upon the future default of the lessee, the exercise by the lessor, upon default, of his option to resume possession, and upon the assumption of the lease by the trustee in bankruptcy. The court says:

" 'As the lessor had no legal claim or demand against the lessee for the agreed rents to be paid in the future, when the petition in bankruptcy was filed, and as the future existence and the amount of such a claim were both contingent upon unforeseen future events. Watson had no provable claim for any part of these rents. * * * Throughout the entire field of contractual obligations the adjudication in bankruptcy absolves from no agreement, terminates no contract, and discharges no liability. * * *

" 'The adjudication in bankruptcy did not constitute a breach of the lease * * * at that date the rent had been paid. * * *'

"In re Roth & Appel, supra, the lease contained a provision that if the lessee were declared bankrupt the lease shall terminate and the lessor has a right to re-enter in which case the lessee agreed to pay each month the difference between the rent stipulated in the lease and the amount otherwise collected by the lessor as rent. The lessor relet the premises and filed a claim for the difference. The court denied the claim because it was not 'a fixed liability absolutely owing' at the date of bankruptcy;

that it was contingent in its nature depending on whether the lessor under the lease would terminate it and whether there would be any loss or not.

"In Colman Co. v. Withoft, the claim presented was for money paid by claimant to the lessor in order to secure a release from the latter of the obligation of the claimant and the bankrupt who were joint lessees.

"The payment made by the claimant to the lessor for a release occurred after bankruptcy. The court held this a claim not absolutely owing at the date of bankruptcy.

"The case of In re Pennewell (6 C. C. A.) 119 F. 139, 55 C. C. A. 571, is also sometimes cited in favor of the contention of the trustee. In that case a subtenant of the bankrupt, who himself was a lessee of the premises, filed a claim against the bankrupt estate. The trustee sold the lease, but apparently prior thereto the trustee dispossessed the subtenant. The court held the claim not provable. It is only necessary to quote a part of the opinion to discover that this case is not in point:

"'It is urged further that the adjudication of bankruptcy * * * terminated his [bankrupt's] lease * * * whereby the leases to the petitioners were defeated, and that, in consequence, they had a claim for damages against the bankrupt's assets. * * * It may be true that, if the trustee had elected not to adopt the lease and realize its value to the estate, the lease would have come to an end. But we need not pursue that inquiry.'

"It is evident, leaving out of consideration the particular provisions in the leases in the above cases, that the chief objection urged by the courts to allowing damages for breach of leases is that such claims are not fixed liabilities absolutely owing at the date of bankruptcy; that they are contingent claims depending upon what the lessor or the trustee does with the lease.

"The language of the Supreme Court in the Auditorium Case, when examined with reference to the contract it had before it, clearly answers that argument. There was just as much uncertainty about the claim that Auditorium Association had an option to cancel upon six months' notice, and the court refused to permit that to be considered as in any way limiting recovery to a six months' period. In that case, also, the Auditorium Association might possibly have received a larger sum from some other transfer company, or might have done any number of things that would have excused performance by the transfer company; or the trustee, as the court says, might have adopted it or perhaps sold it.

"While not exactly in point, it may be helpful in arriving at a sound conclusion to call attention to a number of cases, where receivership of a corporation lessee, incident to wind-up proceedings, was held to be an anticipatory breach of the lease giving rise to claim for damages against the estate of the insolvent lessee. Kalkhoff v. Nelson, 60 Minn. 284, 62 N. W. 332; People v. Bank, 151 N. Y. 592, 45 N. E. 1129; McGraw v. Union Trust Co., 135 Mich. 609, 98 N. W. 390; Chicago Fire Co. v. Tait, 58 Ill. App. 293; Matter of Mullings Clothing Co., 238 F. 58, 151 C. C. A. 134, L. R. A. 1918A, 539, 38 Am. Bankr. Rep. 189 (2 C. C. A.). See, also, Elliott on Contracts, § 2042.

"In matter of Mullings Clothing Co., supra, decided prior to Auditorium Case, a receiver for the bankrupt had been appointed in the state court incident to a dissolution of the corporation. Thereafter, in bankruptcy, the lessor of the bankrupt corporation was held to have a provable claim for damages by reason of the anticipatory breach of the lease occasioned by the receivership. The lessee had never entered upon the term. The court said:

"'In voting to wind up, and in taking steps to dissolve * * * the corporation, lessee renounced the lease and at the same time disabled itself from performing it. * * * And the law is well settled that, where a party to an executory contract puts it out of his own power to perform it, there is an anticipatory breach, which gives the other party an immediate right of action for the damages. Black on Rescission and Cancellation, vol. 1, § 210. * * *

"'We have no doubt that, while in this case the lessor's claim was unliquidated at the time the petition in bankruptcy was filed, it was not contingent. * * * A contingent claim is one as to which it remains uncertain, at the time of the filing of the petition in bankruptcy whether or not the bankrupt will ever become liable to pay it. * * * If one party to an executory contract renounces it without cause, or disables himself from performing it, the other party may consider the contract as broken and bring an action immediately to recover the damages. * * *'

"The court attempted to distinguish this case from Roth & Appel, supra, in which case a claim for breach of the lease was not allowed because the breach had not occurred prior to bankruptcy, i. e. in the Roth & Appel Case the bankruptcy itself was relied

upon as the breach, not as in the Mullings Case—a repudiation and disablement prior to bankruptcy. While this may be a distinction, it is hardly a difference in view of the words of the court in the Auditorium Case —decided, be it remembered, after the Mullings Case—that a breach coincident with bankruptcy is sufficient to constitute a claim absolutely owing as defined in section 63 of the act.

"The test as to whether a claim is contingent or is simply unliquidated is this: Have all the facts necessary to be found to fasten liability already occurred? If so, the claim is not contingent, although the amount of the liability or the extent of damages may not yet have been ascertained—nor even the full extent of damages arising been already suffered.

"Adjudication nor the discharge affects contractual relations, unless such relations prior to bankruptcy or by virtue of the bankruptcy (i. e., by reason of bankruptcy's being expressly or by law a breach of the contract) have become merged in a 'debt, demand or claim.' 2 Remington, § 775.

"It seems to me that courts and text-writers have too often confused the words 'contingent' and 'unliquidated.' Black on Bankruptcy, § 523. The difference must constantly be kept in mind in considering claims for breach of contract.

"If then bankruptcy is in fact an anticipatory breach of a lease or other contract, a 'debt, demand or claim' arises, provable against the estate because absolutely owing at the time of bankruptcy.

"The Supreme Court held bankruptcy an anticipatory breach of an executory contract in the Auditorium Case. The contract in that case was not a lease of real property. The question then is: Is bankruptcy ever an anticipatory breach of a lease, and, if so, was it such breach in the instant case? If it was, then it necessarily follows that it is a provable debt and hence dischargeable.

"It is true that in its opinion in the Auditorium Case the Supreme Court refused to take into consideration or to discuss the cases that involved proofs of claim based upon leases of realty. It said:

" 'Cases of the latter class [cases arising out of the relation of landlord and tenant] are distinguishable, because of the "diversity between duties which touch the realty, and the mere personalty." Co. Litt. 292, b, § 513.'

"While there may be a distinction in some particulars in 'cases arising out of the relation of landlord and tenant,' because, be-

sides being an executory contract, a lease also possesses the property of passing an interest, and hence partakes of the nature of an estate that we call a 'term,' still in so far as the lease is an agreement to pay money or to do something involving the delivery of property, it is no different than any other contract containing the same obligations.

"I am strongly moved to this conclusion, particularly in view of the aims and purpose of the bankruptcy as stated in many decisions, and particularly in the Auditorium Case. The court said in connection with the assertion that it is an implied term of every contract that the promisor will not permit himself through insolvency to be disabled from performance, and presumably as a further reason for making claims of this kind provable and hence dischargeable:

" 'It is the purpose of the Bankruptcy Act, generally speaking, to permit all creditors to share in the distribution of the assets of the bankrupt, and to leave the honest debtor thereafter free from liability upon previous obligations. Williams v. U. S. Fidelity Co., 236 U. S. 549, 554, 34 Am. B. R. 181. Executory agreements play so important a part, in the commercial world that it would lead to most unfortunate results if, by interpreting the act in a narrow sense, persons entitled to performance of such agreements on the part of bankrupts were excluded from participation in bankrupt estates, while the bankrupts themselves, as a necessary corollary, were left still subject to action for nonperformance in the future, although without the property or credit often necessary to enable them to perform.'

"In re Neff, 157 F. 57, 84 C. C. A. 561, 28 L. R. A. (N. S.) 349, 19 Am. Bankr. Rep. 23 (6 C. C. A.), cited with approval in the Auditorium Case, a case in which bankrupt was under obligation to purchase certain stock in the future, the court held bankruptcy an anticipatory breach. The court said:

" 'That the promisor might refuse performance until the time named is true. But if, before the time of performance one absolutely repudiate liability and disavow unequivocally any purpose to perform at any time, the other party may treat such repudiation, at his election, as a breach of the agreement and sue for his damages. * * *

" 'Bankruptcy is a complete disablement from performance and the equivalent of an out and out repudiation, subject only to the right of the trustee, at his election, to rehabilitate the contract by performance. * * * It is sufficient that a claim becomes

provable as a consequence of bankruptcy. The right to sue for and recover damages then accrues.'

"Williston on Contracts, vol. 3, § 1985, has a very learned discussion of this question, in which it is said that a claim for breach of lease is not provable under the present Bankruptcy Act. ·He admits that it is an unfortunate situation, but says that any other, conclusion is illogical, because to hold that bankruptcy altogether terminates a lease as some cases hold, would deprive the trustee in bankruptcy of any right to assume a lease.

"While· it may be true that to hold that bankruptcy altogether terminates a lease, i. e., severs the relation of landlord and tenant (Re Jefferson [D. C.] 93 F. 951), would result in serious consequences, it should be noted, first, that in the Auditorium Case the court held bankruptcy to be breach but with the right in the trustee to adopt the lease or to sell it. In the next place, to hold bankruptcy of tenant an anticipatory breach of the obligation to pay rent, does not necessitate a holding that bankruptcy severs the relation of landlord and tenant. It is merely a disablement and repudiation of financial obligations with which bankruptcy has concern and from which it relieves the bankrupt. .Bankruptcy of a landlord would not ordinarily constitute an anticipatory breach because his obligation in the lease is not ordinarily one to pay or deliver something in the future. He has already, by the lease, granted a term in property. If the landlord perchance in a lease had agreed to rebuild or repair or do anything involving financial outlay, his bankruptcy should be regarded as an anticipatory breach of that provision in the lease.

"For example, in Board of Commerce v. Security Trust Co. (6 C. C. A.) 225 F. 454, 140 C. C. A. 486, 34 Am. Bankr. Rep. 762, the bankrupt agreed with claimant to move to Ann Arbor and to maintain a pay roll to a certain amount for a number of years. The claimant agreed to furnish a site, sell bonds, etc. The court held bankruptcy an anticipatory breach of the agreement to maintain the pay roll and permitted proof of claim to be made.

"See, also, Heyward v. Goldsmith (3 C. C. A. 1921) 269 F. 946, 46 Am. Bankr. Rep. 722.

"Bankruptcy has to do with debts, claims, and demands. If an executory contract obligates a bankrupt to do something of a character that impliedly requires him to maintain himself solvent, then bankruptcy is a disablement and repudiation and constitutes an anticipatory breach. This seems to me to be the logic of the situation and consonant with the purposes of the Bankruptcy Act.

"In the instant case, if bankruptcy is held, as I think it must be held, to be the equivalent of a repudiation and abandonment by the bankrupt of its obligation to pay rent under the lease, the lessor had a right to sue for damages. There is nothing in the lease, here considered, that is in derogation of such right. There is no provision as to what the liability is to be upon bankruptcy. There can be no contention that the lessor forfeited the lease and resumed possession under circumstances negativing a right to recover damages for the rest of the term.

"The lessor in this case can recover damages as upon abandonment outside of bankruptcy. These damages are measured by the difference between the rent agreed and the sum that he could have realized after they came into his possession; that is, the difference between the rent stipulated in the lease and the actual rental value for the balance of the term. Sutherland, Damages (4th Ed.) p. 3110; Strong v. Schmidt, 15 Ohio Cir. Ct. R. 233.

"It is conceded by the trustee that the damage of the claimant is the amount claimed by it, viz., $34,600, from which, however, should be deducted the sum of $17,000 held by it as security for performance by the lessee.

"I find, accordingly, that the claimant has a provable claim against the estate, and that the amount thereof is $17,600."

Niman, Grossman, Buss & Holliday, and T. F. Veach, all of Cleveland, Ohio, for trustee.

Ulmer & Berne and J. Albert Lowell, all of Cleveland, Ohio, for claimant.

JONES, District Judge. The special master found that the Twenty-First Street Realty Company was entitled to prove and have allowed its liquidated claim for loss and damage arising out of the breach of the lease occasioned by this bankruptcy. The trustee objected to the allowance of the claim, and has excepted to the finding of the special master on the grounds: First, that the special master should have held that the claim was precluded by the terms of the lease; and, second, that the claim is a contingent one and not provable in bankruptcy, and that the finding ·of the special master allowing the claim is contrary to law.

The Twenty-First Street Realty Company

entered into the lease with the bankrupt for a term of eight years beginning October 1, 1922, providing for a rental of $17,000 per year for the first three years, and a rental of $17,500 per year for the remaining five years. The lease was executed September 30, 1920. The lessee was adjudged bankrupt in 1922, and the premises in question were occupied by the trustee in bankruptcy, who elected not to assume the lease, but abandoned it as of no value to the estate. The lessor did nothing to forfeit the lease, under clause 5 of the lease providing therefor, and took no steps to re-enter or repossess the property. After the trustee had abandoned the property, the lessor filed its claim for damages because of the breach of lease occuring by reason of the bankruptcy.

It has been conceded by the trustee that the measure of damage to the lessor, if its claim is to be allowed, is the sum of $34,600, less $17,000 paid by the bankrupt as security for the performance of the lease.

[1, 2] The question, then, is whether the lessor has a provable claim against the bankrupt estate as for damages resulting from an anticipatory breach of an executory contract.

It has been well settled that bankruptcy proceedings amount to an anticipatory breach of an executory contract, and that unliquidated damages arising out of such breach may be liquidated by the court, and proved against the bankrupt estate. Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 592, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580. It has been suggested that Mr. Justice Pitney in that case distinguished the cases arising between landlord and tenant and those affecting personalty. No reason for the difference is given, but reference is made to authority upon that question. I see no difference between the nature of the claim arising out of a breach of a lease and one arising out of the breach of contract for personalty. The bankrupt, by insolvency, has completely disabled himself from performance, and when the trustee in bankruptcy rejects or fails to assume the lease, the right of the lessor to liquidate his damages accrues, unless in some manner the lessor has precluded the making of such claim by forfeiture of repossession or re-entry. It is not a claim for rent in futuro, but a claim of damage or loss for breach of contract.

The payment of the stipulated rental over the future period of the lease was not contingent upon bankrupt's continued occupancy. He was bound to pay the rent for the

5 F.(2d)—8

balance of the term, whether he stayed in possession or not; it was a fixed liability. If the bankrupt had had an option to terminate the lease at some time, or under certain conditions, it might not be considered a fixed liability; but there was no way out for him but to pay the rent. It was absolutely owing, although payable in future installments.

No later pronouncement upon this subject has been offered, and I am inclined to the opinion that the decision in Central Trust Co. v. Chicago Auditorium is applicable to the controversy here presented.

The report of the special master will therefore be approved and adopted, and the exceptions thereto overruled.