## In re MUNSIE.*

District Court, D. Connecticut. January 10, 1929.

No. 9239.

*Order reversed, 33 F.(2d) 79.

BURROWS, District Judge. This is a petition to review the finding and order of a referee in bankruptcy upon an application of the bankrupt to liquidate the claim of a creditor. The creditor, Dora Gottlieb, feeling aggrieved, filed this petition for review, which was granted. The facts set up in the certificate upon petition for review, upon which said order was based, are as follows:

(1) When the bankrupt filed his petition on February 10, 1928, he had outstanding against him as his sole liability a claim based

upon a lease with Mrs. Dora Gottlieb for the premises 10–12 South Main street, South Norwalk, Conn., entered into on October 27, 1924, for the term of five years from February 1, 1925, for a yearly rental for the first two years of $6,000, payable in monthly installments of $500 in advance, and $7,500 for the last three years, payable monthly at $625, together with rental payments to be made of the store prior to occupancy, and water taxes, alterations, and repairs to be made.

(2) Munsie entered into possession, made alterations and repairs at a cost of several thousands of dollars, but as business was poor, and as he claimed to have lost about $20,000 in the venture, he sold out under an arrangement that provided him with sufficient funds to pay off all his debts, including rent to October 1, 1926.

(3) The premises were vacant from October 1, 1926, until April 1, 1927, when the landlord relet for the balance of the term of the lease at a rental of $275 per month less than that due from Munsie.

(4) At the first meeting of creditors on March 2, 1928, Mrs. Gottlieb filed her claim in the amount of $6,857.75, giving due allowance for rent collected under the new lease, and including interest to date of filing.

(5) The bankrupt's only asset is a life insurance policy with a cash surrender value of about $300, which, upon demand, was turned over to the trustee.

(6) Since the filing of the petition, Mrs. Gottlieb has garnisheed Munsie's wages in New York City; Judge Thomas, of this district, has issued a restraining order; Mrs. Gottlieb has moved that this order be vacated, and Munsie has petitioned for the liquidation of this claim.

(7) In this petition the bankrupt seeks to include in the Gottlieb claim the rent which has accrued since bankruptcy and which will accrue in the future, and this the landlord objects to.

(8) Mrs. Gottlieb claims that the rent, to become due under the lease is contingent, and that therefore it cannot be liquidated under section 63a(1) or (4) of the Bankruptcy Act; but in this connection it must be considered that the bankrupt admits the liability, and Mrs. Gottlieb has sued upon at least one installment due since bankruptcy.

(9) The tenant, Munsie, was out of the leased premises, and the landlord, Mrs. Gottlieb, was in possession, and a new lease entered into with the Smart Shop, Inc., et al., several months before bankruptcy.

(10) The petitioner at the hearings claimed that what was due creditors on account of the abandonment of the premises and the reletting was not rent as such, but rather damages for the breach of the renting contract.

The referee ruled and held that said claim could be liquidated. As indicated in paragraph 8 of the certificate upon petition for review, the creditor's claim is that the rent to become due under the lease is contingent, and that therefore it cannot be liquidated under section 63a(1) or 63a(4) of the Bankruptcy Act (11 USCA § 103(a)(1)(4). If the lease in question were absolutely terminated at the time of the filing of the petition in bankruptcy, it is not contingent, but a fixed liability, and absolutely owing and provable under section 63a(1).

■ The rule to determine whether or not the claim is contingent or fixed is laid down in Re Mullings Clothing Co. (C. C. A.) 238 F. 58, which was an action for breach of contract occasioned by the steps taken to wind up and dissolve a corporation, wherein the court said:

"The Bankruptcy Act of August 19, 1841 [5 Stat. 440] * * * provided for the allowance of contingent claims. The present Act, however, makes no provision for the proof of such claims, and it is well understood that they are not provable. We have no doubt that while in this case the lessor's claim was unliquidated at the time the petition in bankruptcy was filed, it was not contingent. * * * *A contingent claim is one as to which it remains uncertain, at the time of the filing of the petition in bankruptcy, whether or not the bankrupt will ever become liable to pay it. If it is certain that he is liable to pay it, although it may be uncertain how much he will have to pay, the claim is unliquidated, but it is not contingent.* * * * If one party to an executory contract renounces it without cause, or disables himself from performing it, the other party may consider the contract as broken and bring an action immediately to recover the damages. The liability in such cases is therefore not contingent, but absolutely fixed."

■ Under the facts of this case, it is certain that the tenant was liable to pay under the terms of the lease, but it was uncertain, at the time he surrendered the premises and they were repossessed by the landlord, how much he would have to pay. Under the above rule there is no question in my mind from the facts that the tenant surrendered these premises, and "a surrender by a particular tenant has the effect of extinguishing his estate, and if he is a tenant under a lease it terminates all future liability under the covenants, the

most ordinary application of this principle occurring in the case of a covenant to pay rent, which ceases to be effective after a surrender." 2 Tiffany on Real Property (2d Ed.) 1588.

In Miller v. Benton, 55 Conn. 529, 545, 13 A. 678, it was held that ordinarily the surrender of leased premises by the lessee and the acceptance of them by the lessor would constitute a mutual rescinding of the contract of lease, and it would cease to exist for every purpose. Whatever the action of the creditor may have been subsequent to the petition in bankruptcy, I can come to no other conclusion than that it was her intention to accept this surrender *by her acts* in taking possession of the premises and in executing a new lease to the Smart Shop, Inc., months before the petition in bankruptcy.

As was held in the case of Miller Co. v. Grussi, 90 Conn. 555, 559, 98 A. 90, 92: "* * * An agreement to surrender a lease, or to abandon it, or any act which would be equivalent to such agreement, and an acceptance of the surrender or abandonment by agreement, or acts equivalent thereto, will amount to a surrender or abandonment in law."

In order to maintain an action for rent on a lease, it is clear that the lease must still be valid. If the lease between the creditor and the bankrupt is valid, we have two valid leases on the same premises terminating at the same time. The very fact that the landlord leased these premises to the Smart Shop, Inc., for a monthly rental of $275 less than that stipulated in the lease with the bankrupt indicates that the landlord, prior to entering into the lease with the Smart Shop, Inc., considered the lease with the bankrupt as absolutely terminated.

The creditor cannot now call her claim one for rent, when she cannot place the bankrupt or the trustee in possession of the premises as of the former estate of the bankrupt, but must bring her claim for damages for any loss which she has sustained. If, during the continuance of the term under the lease, the tenant surrendered possession of the premises, and the premises had remained vacant and not been sublet, there could be no question then that the lease is still in force and that the tenant is liable for rent.

In the case of Bacon v. Brown, 9 Conn. 334, 338, the court said: "If, during the continuance of the tenancy, the tenant abandons possession of the premises, he is as much liable for the rent as though he continued his occupancy."

But when there is the act of surrender by the tenant, and a subsequent subletting by the landlord, there is a termination of the lease by operation of law. "A surrender by operation of law occurs, where the parties without express surrender, do some act or acts from which it is necessarily implied that they have both agreed to consider the surrender as made, acts which are necessarily inconsistent with the continued relation of landlord and tenant. While it has frequently been said that whether a lease has been terminated by operation of law is a question of intention of the parties, it is, nevertheless, held that this mutual agreement may be implied upon the principle of estoppel from the acts of the parties, independently of, and even contrary to, their actual intent. The surrender or abandonment of a written lease may be inferred from the acts and conduct of the parties." 35 C. J. 1086; Triest & Co. v. Goldstone, 173 Cal. 240, 159 P. 715.

Quoting from 2 Thompson on Real Property, § 1461: "* * * The term 'surrendered by operation of law' is properly applied to cases where the owner of a particular estate has been a party to some act, the validity of which he is by law afterwards estopped from disputing and which would not be valid if his particular estate continued to exist. Such surrender is the act of the law, and takes place independently of, and even in spite of, the intentions of the parties. * * * *"

It is to be noted that the lease between the creditor and the bankrupt contains the following clause: "Provided, however, and it is further agreed, that if the said rent shall remain unpaid ten days after the same shall have become payable as aforesaid, or if said lessee * * * shall not perform and fulfil each and every of the covenants hereinbefore contained to be performed by said lessee, then this lease shall thereupon, by virtue of this express stipulation therein, expire and terminate, and the lessor may, at any time thereafter, re-enter said premises, and the same have and possess as of her former estate."

Although it has been held in Thompson v. Coe, 96 Conn. 644–651, 115 A. 219, 17 A. L. R. 1233, that nonpayment of rent in and of itself does not necessarily terminate a lease, but gives the lessor the option to terminate it by some definite unequivocal act, it is clear to me that the landlord considered she was protected by the above clause and hence exercised her option to cancel this lease, which is evidenced by the fact that she entered into the new lease. It therefore seems to me that, because of the reasons stated,

there was a termination of the lease prior to bankruptcy, and that there was a fixed liability absolutely owing under section 63a(1), and provable in bankruptcy.

However, I am of the opinion that the act of bankruptcy in and of itself annulled the lease. I am quite aware of the pitfalls that the bankrupt would encounter, if the facts were such that he had to rely solely upon the act of bankruptcy as a ground for annulment of the lease. I have not lost sight, in my examination of the cases, of In re Roth & Appel (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270, cited as a leading case for this circuit on this question. In that case, however, quoting from Judge Noyes, at page 671: "The question in this case—at least with respect to a large part of the claim—is not, in its essence, whether rent to accrue in the future is provable against a bankrupt estate, but whether a claim founded upon an agreement to indemnify a landlord for loss of rents following bankruptcy is provable."

I believe the true rule is that, where one is disabled by bankruptcy itself from performing an executory contract, there is an anticipatory breach on his part which renders the whole claim against him one for damages and provable in bankruptcy. In the case of Roehm v. Horst, 178 U. S. 1, 8, 20 S. Ct. 780, 783 (44 L. Ed. 953), the court said: "It is not disputed that if one party to a contract has destroyed the subject-matter, or *disabled himself so as to make performance impossible, his conduct is equivalent* to a breach of the contract although the time for performance has not arrived; and also that if a contract provides for a series of acts, and actual default is made in the performance of one of them, accompanied by a refusal to perform the rest, the other party need not perform, but may treat the refusal as a breach of the entire contract, and recover accordingly."

It was stated by the court in Pennsylvania Steel Co. v. New York City R. Co. (C. C. A.) 198 F. 721, at page 743: "The rule is well settled that, where one party to an executory contract puts it out of his own power to perform it, there is an anticipatory breach which gives the other party an immediate right of *action for the damages* which he suffers thereby."

The court held in the case of Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, at page 589, 36 S. Ct. 412, 414 (60 L. Ed. 811, L. R. A. 1917B, 580): " * * * It is no longer open to question in this court that, as a rule, where a party bound by an executory contract repudiates his obligations or disables himself from performing them before the time for performance, the promisee has the option to treat the contract as ended, so far as further performance is concerned, and *maintain an action at once for the damages* occasioned by such anticipatory breach. * * * There is no doubt that the same rule must be applied where a similar repudiation or disablement occurs during performance."

In considering these questions, in view of the facts of the case, we cannot lose sight of the general spirit and purpose of the Bankruptcy Act, and I cannot refrain from quoting again from Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, at page 591 (36 S. Ct. 412, 415), where the court said: "It is the purpose of the Bankruptcy Act, generally speaking, to permit all creditors to share in the distribution of the assets of the bankrupt, and to leave the honest debtor thereafter free from liability upon previous obligations. * * * Executory agreements play so important a part in the commercial world that it would lead to most unfortunate results if, by interpreting the act in a narrow sense, persons entitled to performance of such agreements on the part of bankrupts were excluded from participation in bankrupt estates, while the bankrupts themselves, as a necessary corollary, were left still subject to action for nonperformance in the future, although without the property or credit often necessary to enable them to perform. We conclude that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement."

As I have already indicated, there was a breach of contract of lease prior to bankruptcy, and there can be no doubt that it is a claim for damages, and falls within the scope of section 63a(4), and that damages may be liquidated under section 63b, as well as considering the claim a fixed liability, evidenced by an instrument in writing, absolutely owing at the time of filing of the petition.

In this case the trustee also petitioned for a review on the same ground and acting by the same counsel as the creditor, Dora Gottlieb. Yet I am unable to find from the record that the trustee ever sought to regain possession of the premises, and fulfill the terms of the executory contract under his right of election.

The petitions are dismissed, and the referee's findings and conclusions are in all respects affirmed and accepted, and the bankrupt's claim may be liquidated, as therein set

forth, and proved and allowed against the bankrupt's estate in the amount for which it has been so liquidated; and

It is so ordered.