CHARLES H. PERRY, individually; CHARLES H. PERRY, as Trustee; MARY S. PERRY and MURRELL E. SHIELDS, v. HENRY O. SHAW and L. L. OWENS, as Trustees of Flagler Country Club, Inc., a dissolved Florida corporation.

| 13 So. (2nd) 811 | June Term, 1942 |
|---|---|
| October 30, 1942 | En Banc |
| Rehearing granted December 4, 1942 | On Rehearing June 8, 1943 |
| Further Rehearing Denied June 18, 1943 | |

*Hudson & Cason, A. C. Franks* and *H. H. Eyles,* for appellants.

*Worley & Gautier* and *Ward & Ward,* for appellees.

766

CHAPMAN, J.:

From a final decree entered by the Circuit Court of Dade County, Florida, making findings of fact, appointing a receiver, with directions, ordering the liquidation and sale of designated assets of the Flagler Country Club, Inc., and other conclusions as expressed therein, an appeal therefrom has been perfected to this Court. We have been favored with exhaustive briefs and able oral argument and many questions are posed for a decision by this Court.

The property here involved at one time was the homestead of Charles H. Perry, but later converted into a golf course, and when this suit was instituted was being operated under the name of Flagler Country Club, Inc., a Florida corporation. The latter corporation was authorized to transact business by the State of Florida as a corporation on February 28th, 1933, as shown by a certificate of the Secretary of the State of Florida. The title to the land constituting the golf course on March 21, 1933, appeared in the names of Charles H. Perry and wife, Mary S. Perry, by the entireties.

The Perrys, on March 21, 1933, executed a lease of indenture to the Flagler Country Club, Inc., of the lands formerly embracing the Perry homestead and subsequently used as a golf course. The lease of indenture contained numerous provisions unnecessary to mention except the period of time named therein was 30 years. The Flagler Country Club, Inc., went into possession and operated the golf club under the lease of indenture until October, 1937, when by an appropriate instrument the term of 30 years was amended and extended to the year 1967.

The Flagler Country Club, Inc., on December 18, 1937, by proclamation of the Governor of Florida was dissolved under the provisions of Chapter 16880, Acts of 1935, Laws of Florida, for its failure to file reports and to pay the capital stock levied under Chapter 14677, Acts of 1931, Laws of Florida. Charles H. Perry, as Trustee of the Flagler Country Club, Inc., brought an equity suit against the officers and stockholders of the corporation and others. Pursuant to an order on April 30, 1940, C. H. Perry and Mary S. Perry, owners by the entireties and lessors of the land on which the Flagler

Country Club, Inc., operated a golf club, filed a bill of intervention praying for an order or decree cancelling, annulling and voiding the lease of indenture dated March 21, 1933, with the amendment extending the period of time named until 1967.

It was alleged by the intervenors that under the terms of the lease and amendment, that the sole and only consideration for the execution by the lessors was that the lessees, Flagler Country Club, Inc., would operate the golf course or other business on the land for which the intervenors. and lessors would receive as rents a stated proportion of the earnings of the property and not otherwise. That the dissolution of said corporation constitutes a breach of the executory contract which as a matter of law entitles the lessors and intervenors to a decree cancelling and declaring void the lease and amendment.

Considerable space in the briefs and time during the oral argument of counsel at the bar of this Court were consumed by the question posed, namely: Does such dissolution of the corporation, as disclosed by the record, effect a breach of the lease and amendment thereto which justifies the lessors and intervenors in treating and considering the same as terminated? In the case of City of Hollywood v. Bair, 129 Fla. 93, 178 So. 850, 130 Fla. 742, 178 So. 850, it was shown that O. W. Collins, Inc., a Florida corporation, had defaulted in payment of capital stock tax and required corporate returns for the years 1932, 1933, 1934, 1935 and 1936, and it was held that a cause of action against such a corporation does not abate because Section 7 thereof excepts judgments against such defaulting corporations. See Lyman v. Smith, 137 Fla. 310, 188 So. 337. Section 9 of Chapter 16880, supra, provides that directors of dissolved corporations . . . shall be trustees for any property owned by the corporation . . . but the corporations as such, after being dissolved, shall have no corporate rights or be authorized to transact any business as a corporation. The trustees shall handle and dispose of the property of the corporation for the benefit of the corporation.

Counsel for intervenors and lessors contend that it was within the power of the officers and stockholders of the

Flagler Country Club, Inc., to make the annual reports and to pay the capital stock tax required by the provisions of Chapter 16880, *supra;* that the failure and neglect on their part to conform to these provisions should be construed as an intentional breach and termination of the lease from the lessors to the Flagler Country Club, Inc.; that the actions of the officers and stockholders in permitting the corporation to be dissolved is an anticipatory breach of the lease and the lessors had the lawful right to so declare by filing suit on April 30, 1940. An example of the application of the rule is where an engagement to marry exists and the defendant breaches the agreement by marrying another, or by his other acts or deeds renders it impossible to perform. The Supreme Court of Florida has recognized this principle in Sullivan v. McMillan, 26 Fla. 543, 8 So. 450; Behrman v. Max, 102 Fla. 1094, 137 So. 120; Slaughter v. Barnett, 114 Fla. 352, 154 So. 134, 102 A.L.R. 1073.

Williston on Contracts Vol. 5 (Rev. Ed.) par. 1326, p. 3728, states the rule that any voluntary affirmative act which renders performance of a contract impossible, or apparently impossible, is an anticipatory breach, and upon the breach the party has a right, first, to rescind the contract altogether; second, to elect to treat the repudiation as a breach by bringing suit or by making some change in position; or, third, to await the time for performance of the contract and bring suit after that time has arrived. See par. 1337, p. 3753, *supra.*

Elliott on Contracts, 1913-1923 Cumulative Supplement, is in accord with the rule laid down by Williston on Contracts, supra, as expressed in paragraphs 2040, 2041, and 2042, pages 507-509, viz:

"2040. Creation of Impossibility of Performance by Death of Party.—Contracts for the performance of purely personal services are discharged by the death of either party, but the death of a party to a contract by which a corporation agrees to make payment of a certain sum annually so long as a certain condition exists, or the death of a payee of a contract binding the maker to pay a specified sum as nearly as possible to meet such payee's requirements, or the death

of a father who has agreed to convey land to his children upon the making of certain payments by them does not discharge the contract, as in none of these cases does the contract come within the personal service rule. Ordinarily a contract is not extinguished by the death of one of the parties, if it may be performed by his personal representative. The question is largely one of the intention of the parties.

"2041. Creation of Impossibility of Performance Where Promisor is Disabled by Act of Promisee.—When performance of a contract is prevented by the wrongful interference of one party, the other has the right to treat such wrongful act as a breach and sue for damages, or, if the contract has been partly performed he may sue for compensation for the work actually performed. This would be true when the promisee refuses to permit the promisor to go ahead with the contract and orders him to stop work.

"2042. Creation of Impossibility by Bankruptcy or Insolvency of Party.—The filing of a voluntary petition in bankruptcy by one party to a contract constitutes a repudiation and anticipatory breach; and the filing of an involuntary petition may amount to breach where the trustee in bankruptcy does not elect to perform the agreement."

A party placing it out of his power to perform, or a party voluntarily becoming disabled to perform a contract commits a breach for which an action lies. The rule is expressed in 17 C.J.S. par. 470, pages 971-972, viz:

"The act of a party in voluntarily placing it out of his power to perform a contract on his part constitutes a breach thereof, for which an action may be brought, although the time for performance has not yet arrived under the terms of the contract, and performance of conditions precedent on the part of the opposite party is dispensed with.

"It would seem that the impossibility of performance by the party must be absolute, and the rule has been held inapplicable to a case where the party comes under an involuntary disability to perform his obligations, which disability he may remove previous to the time appointed for their per-

formance." See 12 Am. Jur. pars. 391, 392, 393, 394 and 395, pp. 969-974.

The rule that an anticipatory breach of a contract occurs where a party thereto by his voluntary steps renders it impossible or beyond his power to perform, thereby granting to the other party a right to terminate the contract, is well illustrated in the case of In re: Mullings Clothing Co., 238 Fed. 58. A writ of certiorari was denied in the case by the Supreme Court of the United States and the order is reported in 61 L. Ed. 941. The facts are viz: the officers and stockholders of the Mullings Clothing Company, a corporation, voted to *dissolve* the corporation and united in asking the State Court to appoint a receiver and wind up its business affairs; the receiver was appointed by the Court and the receiver so appointed repudiated and abandoned the lease on the building housing the business, and the Court held that the action of the officers and directors of the corporation in taking steps to dissolve the corporation and to wind up the business affairs thereof amounted to a repudiation or termination of the lease and was an anticipatory breach, because by the voluntary actions of the officers and stockholders of the corporation they put it beyond the power of the corporation to perform the several duties enumerated by the terms of the lease.

The Court, in part, said (text 238 Fed. 63) :

"In Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, (1899), the court held that where a contract is renounced before performance is due, and the renunciation goes to the whole contract and is absolute and unequivocal, the injured party may treat the breach as complete and bring his action at once. The year before this decision was rendered this court had announced the same principle in Marks v. Van Eeghen, 85 Fed. 853, 30 C.C.A. 208 (1898), in an opinion written by Judge Wallace. The doctrine had been announced in England in 1853 in Hochester v. De la Tour, 2 El. & Bl. 678. And before its adoption by the Supreme Court of the United States it had been almost universally accepted by the Courts of this country.

"In voting to wind up, and in taking steps to dissolve and

securing the appointment of a receiver in the state court for that purpose, the corporation lessee renounced the lease and at the same time disabled itself from performing it. It put it out of its power to occupy before the time arrived for the new term to begin. And the law is well settled that, where a party to an executory contract puts it out of his own power to perform it, there is an anticipatory breach, which gives the other party an immediate right of action for the damages. Black on Rescission and Cancellation, volume 1, par. 210 (Ed. 1916), and the cases there cited. Hence in Lovell v. St. Louis Life Insurance Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423, the Supreme Court held that, where a life insurance company had terminated its business and transferred its assets and policies to another company, this in itself authorized the insured to treat the contract as at an end, and to sue to recover back the premiums already paid, although the time for the performance of the obligation of the company had not arrived. And Mr. Justice Bradley, speaking for the court said:

" 'Where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated and demand whatever damage he has sustained thereby.'

"In Pennsylvania Steel Co. v. New York City Ry. Co., 198 Fed. 721, 744, 117 C.C.A. 503 (1912), this court held that, where a party to a contract puts it out of his power to perform it there is an anticipatory breach, which gives the other party an immediate right of action for the damages which he sustains thereby, and that where one party is a corporation, its insolvency and the appointment of a receiver, who refuses to further perform, is such a disablement, and the breach dates from the receivers' appointment."

See Okmulgee Window Glass Co. v. Frink, 260 Fed. 159; Bowe v. Minnesota Milk Co., 44 Minn. 460, 47 N.W. 151; Central Trust Co. v. Chicago Auditorium Ass'n. 36 Sup. Ct. 412, 240 U. S. 581, 60 L. Ed. 811; In re Bissinger Co., 5 Fed. (2nd) 106; In re Civic Center Realty Co., 26 Fed. (2nd) 825; In re Munsie, 32 Fed. (2nd) 304; Black on Rescission and Cancellation, Vol. 1 (2nd Ed.) par. 210, p. 589-90; Fletcher

Cyclopedia Corporations, Vol. 16 (1942 Rev. Vol.), par. 8120, p. 861-62.

The doctrine of anticipatory breach of contracts applies to those contracts embodying mutual and interdependent conditions and obligations. The doctrine is limited to contracts involving obligations of an interdependent nature. Mutual obligations and stipulations of contracts are the basis of the rule and do not apply to mere promises to pay money. See 12 Am. Jury. par. 394, p. 973; Brimmer v. Union Oil Co., 81 Fed. (2nd) 437, 105 A.L.R. 454; Writ of certiorari denied, see 298 U.S. 668, 80 L. Ed. 1391, 56 Sup. Ct. 883.

A dissolution of a corporation has been described as that condition of law and fact which ends the capacity of the body corporate to act as such and necessitates a liquidation and extinguishment of all legal relations existing in respect to the corporate enterprise. It denotes the complete destruction of the corporation, and, within contemplation of law, is equivalent to its death. The corporate existence terminates by the order of dissolution. See Fletcher on Cyclopedia Corporations, Vol. 16 (Perm. Ed.) par. 7966, p. 655; Section 9 of Chapter 16880, Acts of 1935, Laws of Florida, that the corporation as such, "after being dissolved, shall have no corporate rights, or be authorized to transact any business as a corporation."

The order of dissolution of the Flagler Country Club, Inc., dated December 18, 1937, evidenced by the proclamation of the Governor of the State of Florida, attested by the Secretary of State under the Great Seal of the State of Florida pursuant to the provisions of Section 4 of Chapter 16880, *supra,* as suggested by counsel for appellees, should not have the legal effect of a dissolution of the corporate rights and privileges, but only suspends these corporate privileges until the capital stock tax is paid, and the case of Jarvis v. Chapman Properties, 110 Fla. 17, 147 So. 860, is cited and relied upon to sustain this contention. We have examined the cited case in the light of the contention made and conclude that the case construed the provisions of Chapter 14677, Acts of 1931, which authorized a *suspension* of the corporation privileges, while Chapter 16880, Acts of 1935, *supra,* subsequently

enacted, authorizes a more drastic penalty than suspension; namely, a dissolution and a denial thereafter of the right and privilege to transact business in the State of Florida as a corporation. See Section 9 of Chapter 16880, *supra*.

Counsel for appellees cite Section 8124 of Volume 16. (Perm. Ed.) of Fletcher's Cyclopedia of Corporations. We have carefully examined the authority. The answer to the contention is that the property rights acquired under the lease may, as provided by our statutes, be handled and disposed of by the trustees of the dissolved corporation, but it. is not authority to sustain the contention that the lessors have not acquired by the order of dissolution a right of action against the dissolved corporation for an anticipatory breach of the lease if they so elect, as has been done in the case at bar. Section 8120 of Fletcher's Cyclopedia of Corporations, supra, page 861, holds that the dissolution is regarded as a breach, because the corporation has voluntarily incapacitated itself from further performance of the lease. The lessors by the order of dissolution were placed in the position of one to whom further performance of the lease has been definitely refused. The case cited in the footnote of the text to sustain the statement is Okmulgee Window Glass Co. v. Frink, 260 Fed. 159; Certiorari denied 251 U. S. 563, 64 L. Ed. 415, 40 Sup. Ct. 342.

Counsel for appellees cite Cummington Realty Associates v. Whitten, 239 Mass. 313, 132 N.E. 53, 17 A.L.R. 527. The holding of the Court in the cited case is similar to Section 8124 of Fletcher's Cyclopedia on Corporations, *supra*. The case is not authority to sustain the contention that the lessors by the dissolution order have not a right to declare the lease void. They may declare the lease void or cancelled by the order of dissolution, or may re-affirm the lease and maintain a suit against the trustees for rents reserved. In the case at bar they elected to declare the lease cancelled and filed suit on April 30, 1940, to obtain such a decree.

The case of Cohen v. L. & G. Inv. Co., 186 Wash. 308, 57 Pac. (2nd) 1042, is cited as a case holding squarely with their contention. The City of Paris, a corporation, leased a building for ten years at a rental of $11,000.00 per month. The

$11,000.00 was deposited with the lessors to guarantee the faithful performance of rent payments. The City of Paris, a corporation, during the life of the aforesaid lease and after depositing with the lessors the $11,000.00, through its officers and stockholders obtained a court order dissolving the corporation. There was a modification of the lease and monthly rentals reduced and the lessor (Cohen) brought suit to recover a part of the deposit of $11,000.00. The Court held that the lessor (Cohen) could not recover because the testimony disclosed that only $3,300.00 of the $11,000.00 deposit was left and by agreement of the parties the amount of the monthly rental was reduced to $500.00 and the lessor thereby waived past due rents accruing under the original lease. The order dissolving the corporation was immaterial in the case because lessor (Cohen) waived past due rent claims when the rentals were reduced to $500.00 per month.

The cases cited hold that a dissolution of a corporation does not automatically terminate a lease and on that point there is but little conflict in the authorities. In the cited cases the court did not consider or decide the right of a lessor to terminate the executory contract or re-possess the demised premises because the corporation was dissolved. The lessors in the case at bar had a right to cancel the lease and re-possess the property upon the order or proclamation of dissolution or could decline to cancel the lease and sue the trustees of the dissolved corporation for the reserved rentals.

The learned chancellor below, having applied the wrong principle of law to the issues involved, it accordingly follows, that the final decree appealed from is hereby reversed with directions for further proceedings in the lower court, not inconsistent with this opinion.

It is so ordered.

BROWN, C. J., WHITFIELD, and TERRELL, JJ., concur.

BUFORD, THOMAS, and ADAMS, JJ., dissent.

ADAMS, J., dissenting:

Reluctant as the writer is to appear critical of the opinion and judgment reached by a majority of the Court, I earnestly believe the Court is committing us to erroneous principles

of law and binding the parties to an unjust judgment. , The writer is of the opinion that the chancellor entered a proper decree and that same was abundantly sustained by the evidence.

In reality we are dealing with two parties; Henry Shaw and Charles Perry. The latter acting in a dual capacity, individually, and as trustee.

In 1933 (at the bottom of the depression) Perry was the owner of· distressed property, namely a golf course. He solicited money, credit and effort of Shaw. An\ agreement was reached by the two. A corporation was formed. Perry leased the golf courses to the corporation. The lease was assignable by the lessee. Both parties were stockholders and · officers. Perry was president and actively employed by the corporation. In 1937 the corporation was dissolved by operation of law for failure to pay its charter tax. The parties started to procure a new charter and considered proceedings for reinstatement of the old one but did neither. However, they continued to operate under the corporate name of the business just as before until April 3, 1940, when Perry filed suit as trustee against Shaw and others to conclude the business, pay the debts and divide the remaining assets among the stockholders. It was alleged that the leasehold interest was one of the corporate assets.

On April 30, 1940, Perry, by permission of court, intervened individually and took the position that when the charter was forfeited the lease was breached and he could and did now elect to declare it of no effect. This contention is now approved by a majority of the Court.

The law of anticipatory breach of contract was sanctioned at common law and has long been approved in Florida. See Gilliland v. Mercantile Inv. & Holding Co., 147 Fla. 613, 3 So. (2nd) 148 and cases there cited. However, such law does not apply to this case since the lease is an assignable asset and will inure to the creditors and stockholders in equity.

In 32 Am. Jur., page 704, par. 827:

"Dissolution of Corporate Party to Lease.—The Common-law doctrine that upon the dissolution of a corporation, its real estate reverted to the grantor, its personal estate vested

in the Crown, and all debts due to and from it were extinguished by operation of law is now virtually obsolete in this country, and our courts have generally held that a lease to a corporation is not terminated by the dissolution of the corporation. It would seem that the lessor would have a claim against the assets of the dissolved corporation for rentals to accrue after the dissolution."

In Vol. 16, Fletcher Cyclopedia Corporations, page 864, par. 8124:

"A lease to a corporation may, by its terms, terminate where the corporation ceases to exist. But unless the lease so provides, the rights and obligations thereunder are not extinguished by the corporation's dissolution, since leases affect property rights and survive the death of the parties. The stockholders succeed to the rights and liabilities of the dissolved corporation in an unexpired leasehold estate, and the obligation to pay rent, in accordance with the terms of the lease, may be enforced against its receiver."

Cited by the above authors are same of the best courts in the land, among those are Massachusetts, Vermont, Virginia, Washington, New York, Oregon and the Supreme Court of United States. An exhaustive note with authorities cited is found in 17 A.L.R., page 532.

Inasmuch as our corporation statutes directs that the officers act as trustees after forfeiture, it is all the more reason why we should adhere to the above rule. When an individual dies the lessor has recourse against the personal representative. Here, where the corporate life ends, the directors, as trustees, conclude the business on principle the same as the personal representative. The United States Supreme Court has said in the case of Late Corporation of Latter-Day Saints v. United States, 136 U. S. 478, 10 S. Ct. 792, 34 L. Ed. 478:

"When a business corporation, instituted for the purpose of gain or private interest, is dissolved, the modern doctrine is, that its property, after payment of its debts, equitably belongs to its stockholders. . . ."

In the case at bar both parties have submitted their claims to a court of equity and both affirm there was a valu-

able property right in the lease-hold. The law seems settled generally by good authority that if the common law afford no remedy the stockholders and creditors may obtain relief in equity. Folger v. Columbian Insurance Co., 99 Mass. 267, 96 Am. Dec. 747, and other cases there cited.

There is yet another reason why this decree should not be disturbed. Perry was the president of the corporation; he was devoting his entire time to its business. The golf course operated in the same status for approximately three years after actual knowledge of the forfeiture. He was the lessor. He came into court as trustee to wind up the corporate business and tendered an only issue as to the number of shares of stock owned by Shaw. In less than thirty days after filing this suit he as lessor intervened and assumed an inconsistent position from that assumed by him as trustee. The effect of his latter position is to confess his neglect to continue the corporate charter and seek to profit by his own neglect.

There is a great difference of opinion between the writer and the majority opinion. Naturally one view is erroneous. The writer is deeply conscious of his probability to err and will not prolong this in the nature of an argument however duty requires that our position be made clearly known to our colleagues. If we go further we take responsibility for causing error. I sincerely believe that an injustice has been done and an antiquated principle of law has been established which is not suitable to our jurisprudence and modern institutions.

BROWN, C.J., WHITFIELD, TERRELL and CHAPMAN, JJ., dissent.

BUFORD, J., concurs.

PER CURIAM:

On further consideration of this cause on rehearing granted the majority of the Court are of the opinion that we should recede from the majority opinion heretofore prepared by Mr. Justice CHAPMAN, and the judgment entered thereon, and should adopt the minority opinion prepared by

Mr. Justice Adams as the controlling opinion; and thereupon to affirm the final decree.

It is so ordered.

BUFORD, C. J., THOMAS, SEBRING and ADAMS, JJ., concur.

TERRELL, BROWN and CHAPMAN, JJ., dissent.