**NARDIS SPORTSWEAR v. SIMMONS.**

**No. 13929.**

Court of Civil Appeals of Texas. Dallas.

June 25, 1948.

On Motion for Rehearing July 30, 1948.

Further Rehearing Denied Oct. 1, 1948.

Robert Ogden, E. G. Moseley, and Clinton Foshee, all of Dallas, for appellant.

Worsham, Worsham & Riley, of Dallas, for appellee.

BOND, Chief Justice.

Appellant Nardis Sportswear, a dissolved corporation, by its former directors as trustees, acting under authority of Art. 1388, Vernon's Annotated Civil Statutes, instituted this suit on October 15, 1946 against appellee John J. Simmons for specific performance of an option contract to purchase certain real estate. Trial was had to a jury and at the conclusion of the evidence both parties moved for instructed verdict. The trial court denied appellant's motion and sustained that of appellee; accordingly entered judgment that appellant recover nothing by the suit and that appellee go hence without day and recover against appellant all costs incurred. From which judgment appellant has prosecuted this appeal.

The record reveals that the case has been fully developed and that the evidence is

uncontroverted; thus the issues involved here present questions of law. Appellee in his motion upon which the action of the trial court was based, and in counter assignments and points of error in this appeal, contends: (1) Under Art. 1359, Vernon's Revised Civil Statutes of Texas, a dissolved corporation cannot obtain specific performance of a wholly executory contract to purchase land; (2) that an assignment or attempted assignment of the leasehold by appellants, as lessee of the premises, in violation of the terms of the lease contract, voids enforcement of the option to purchase; (3) that the undisputed evidence showing that appellant had parted with all rights under such option agreement, it no longer is entitled to specific performance; (4) that the undisputed evidence showing that appellant had parted with a 50 per cent interest in the option agreement, it is not entitled to specific performance; and (5) in absence of proof by appellant that appellee owned the land involved, and was in position to convey, appellant was not entitled to a directed verdict for specific performance.

The points of law advanced being necessarily germane to appellant's points of error directed to the action of the trial court in refusing to grant appellant's motion for instructed verdict and in instructing the jury to render a verdict for appellee and entering judgment accordingly, countered by appellee to sustain the action of the court, we shall give consideration to the aforesaid issues which are controlling in this appeal.

Appellee's first counter point that a dissolved corporation is not entitled to obtain specific performance of an executory contract to purchase land because of its dissolution, is primarily based on the fact that such purchase would be in violation of Art. 1359, R.S.1925:

"No private corporation shall be permitted to purchase any lands under any provision of this chapter, unless the lands so purchased are necessary to enable such corporation to do business in this State, or except where such land is purchased in due course of business to secure the pay-

ment of debt. Acts 1893, p. 36; Acts 1897, p. 48; G.L. vol. 10, p. 466, 1102."

It will be observed that the above Article pertains to private corporations authorized to do business in this State, and are doing the business authorized by its charter; a going concern where the purchase of real estate is not necessary for the carrying on of its corporate business. Such inhibition has no application whatsoever to a dissolved corporation with qualified limited existence extending over a period of three years under Arts. 1388 and 1389, of the Revised Statutes, Acts 1919, 2d Called Sess., Chapter 8. Such dissolved corporation by law is divorced of all its corporate rights except such as are pertinent to the settling up of its affairs by its directors. It is not authorized to engage in new business, or continue its old business other than the exercise of its statutory rights, by and through its directors as trustees, within the purview of the above Articles, 1388 and 1389.

On June 8, 1943, appellant Nardis Sportswear, Inc., a corporation chartered to transact the business of making ladies' skirts, etc., as lessee, and appellee John J. Simmons, as lessor, entered into a written agreement of lease, with option therein granted to the lessee, running with the lease, to purchase the land and premises involved in this suit. The lease, among other things not pertinent here, provides that it shall run for a term of five years beginning on the first day of July, 1943 and ending on the 30th day of June, 1948, and that the premises were to be occupied as "office and garment factory." The consideration for said agreement as related therein was the sum of "Thirty-seven Thousand Five Hundred and no/100 Dollars payable monthly in advance in the sum of $625.00 per month until the sum of Thirty-seven Thousand and no/100 Dollars ($37,500.00) has been paid in full, upon the conditions and covenants following: * * *

"(6) That the lessee shall not assign this agreement or underlet the premises, or any part thereof * * * without the consent of the lessor in writing.
* . * * * * *

"(14) It is agreed and understood that the lessee has option to purchase the above mentioned described premises together with the 100 feet square of ground at the southeast corner of Wood and Poydras Streets upon which the above described improvements are located together with a tract of land adjoining the above mentioned lot on the east and being further described in deed from G. H. Schoellkopf to John J. Simmons as appears in Book 555, Page 341, Deed Records of Dallas County, same being referred to in deed from G. H. Schoellkopf as 'Second Tract,' together with all improvements thereon, save and except an undivided one-half interest in the partition wall separating the three-story and basement building from the adjoining building south of same, this option to continue through the life of this lease and in the event of purchase by lessee, the total consideration shall be Seventy-five Thousand and no/100 ($75,000.00) Dollars, payable in cash or its equivalent."

Under the terms of said lease agreement the record reveals that the appellant went onto said leased premises, conducted its business thereon and paid the rentals as same became due up to the time of trial of this suit. There was no delinquency in the payment of rents. Mr. Simmons testified on trial that the agreement had never been cancelled.

On May 26, 1945, by and through its stockholders, appellant filed in the Office of the Secretary of State, Austin, Texas, a Certificate of Dissolution showing that all the stockholders, officers and directors of said company, to wit: President, Bernard L. Gold; Treasurer, Irving Gold; Secretary, Viola Ray, agreed to the dissolution. Whereupon, on May 28, 1945, the Secretary of State approved the Certificate and, in turn, dissolved the corporation. Thereafter the corporate affairs were administered by the aforesaid officers and stockholders under the provisions of said Articles 1388 and 1389, R.S.

On December 17, 1945, appellant by and through its directors and officers, seeking to exercise its option for the purchase of the leased premises, addressed a letter to Mr. Simmons, referring in detail to the lease and option agreement and concluding with the statement:

"This is to inform you that the undersigned as said lessee desires to exercise such right and option to purchase said premises at this time for the total consideration of $75,000.00 in cash or its equivalent. Upon being satisfied as to your title to said property upon the examination by our attorney of an abstract of title to same, and the execution and delivery by you as grantor to the undersigned by general warranty deed the said premises to the undersigned, the undersigned will pay and deliver to you the $75,000.00 cash or its equivalent as total consideration for said premises." Signed "Nardis Sportswear. By Bernard L. Gold."

And on January 18, 1947, appellant's attorney addressed a further letter to Mr. Simmons calling his attention to the contents of appellant's letter of December 17, 1945, and concluded with the statement:

"The firm of Nardis Sportswear insists upon exercising this option to purchase the property above referred to for the consideration of $75,000.00 cash or its equivalent, and you are hereby requested to deliver or cause to be delivered an abstract of title to this property in order that same may be examined and the conveyance of such property to the firm of Nardis Sportswear be consummated as provided in such option agreement." Signed "Robert Ogden."

In response to both of the above mentioned letters, appellee furnished to appellant's said attorney the abstract of title as requested and the attorney approved the title as showing in appellee merchantable interest therein, and requested appellee to execute conveyance in accordance with such title and the option agreement and to deliver deed of conveyance to appellant upon acceptance of the agreed consideration, which amount was duly tendered to appellee. On cross examination, Mr. Simmons testified:

"Q. Mr. Simmons, you had several discussions with Mr. Gold about the conveyance under this option, didn't you, before the suit was filed? A. At least one, I am quite positive, but one only, I think. * * *

"Q. Did you ever in those discussions tell him that you had made the contract and were willing to perform the contract but that your wife didn't want you to? A. Well, I think that would be substantially correct. I went, as soon as Mrs. Simmons declined to join me in the deed—I think I would have transferred the property if she had joined me at the time. * * *."

It will be seen from the above that at the time of dissolution of appellant corporation, the lease contract had more than three years to run; thus a valid subsisting obligation outstanding against the corporation and its stockholders to the extent of the corporate assets to pay the rents in the sum of $22,500. The directors, as trustees, under the lease agreement being prevented from assigning or underletting the premises without the consent of the lessor, they were put to the election to either continue occupancy of the leased premises and pay the maturing rents, or to purchase the leased premises to effect settlement of the corporate affairs.

Arts. 1388 and 1389 confer the right and duty upon the statutory trustee of a dissolved corporation in good faith to determine how unsettled affairs of the corporation shall be administered; and that they "may * * * exercise full power and authority of said company over such assets and property." Manifestly, the option agreement involved here was an asset property of the corporation at the time of its dissolution; and until the affairs of the corporation were fully settled, the power and authority under the express terms of the statute vest in its trustee the duty to marshall the corporate assets, liquidate its debts and settle all the affairs of the dissolved corporation.

In the case of Tenison v. Wilson, Tex. Civ.App., 151 S.W.2d 327, error dismissed, this Court held that Arts. 1388 and 1389, R.S., were intended to give directors or managers of a dissolved corporation some discretion in settling the affairs of the corporation and to sell, convey, and transfer the corporation's realty and personalty, and to exercise full power over the corporation's assets, responsible only for wrongdoing. In McBride v. Clayton, 140 Tex. 71, 166 S.W. 2d 125, 126, (writ directed to this Court),

the Commission of Appeals, opinion by Commissioner Brewster, now Justice on the Supreme Court, held in effect (Syl. 3): "A corporation was continued in existence for three years after its dissolution only to collect what was due it, to pay what it owed, and to distribute what was left of its assets to those entitled to them, and powers of its officers became restricted to those of 'liquidating agents.'" That case is also authority that the qualified existence of a corporation for a three year period following its dissolution is in the nature of an administration of its estate, with all of its corporate rights fixed as of the date of its dissolution. In Sulphur Springs & Mt. P. R. Co. v. St. Louis, A. & T. R. Co., 2 Tex.Civ.App. 650, 22 S.W. 107, Justice Head editing the opinion, it is held that property rights of a corporation survive its dissolution for the benefit of those who have any just claim on its assets. On dissolution, the corporate assets become a trust for the discharge of its liability and the surplus belongs to the stockholders. Tex.Jur., vol. 11, p. 135, sec. 470, says: "Lawful dissolution of a corporation will destroy all its corporate franchises or privileges vested by the act of incorporation; but if it holds rights, privileges or franchises having the nature of property, secured by contract based on valuable consideration, these will survive the dissolution of the corporation for the benefit of the persons who may have right to or just claim upon its assets." Hildebrand, Texas Corporations, vol. 3, sec. 861, p. 395, says: "Upon the dissolution of a corporation, the rights, privileges, or franchises of a property nature survive its dissolution."

Authorities may be multiplied holding to the effect that on the dissolution of a corporation, its trustees have full power to settle its affairs, endowed with all the functions necessary to protect and further the interest of the corporation and to continue such corporation for all purposes except the transaction of new business, and that such corporation has the right to enforce contractual rights which were created prior to its dissolution. The law does not contemplate a sacrifice of the interest of creditors or stockholders by the mere fact of the dissolution of the corporation. Although

trustees of a corporation may not, as in the case at bar, during the period allowed by statute for winding up its corporate affairs, assign or sublet leased premises without the consent of the lessor, they may, in the interest of the corporation or its stockholders, purchase the leased property under an option contained in the lease and then, for such purposes, dispose of the property in any way they see fit.

In the case at bar, appellant having leased the property involved in this suit from appellee on June 8, 1943, before its dissolution on May 28, 1945, for the purpose of its "office and garment factory," and the evidence disclosing that it occupied the premises and carried on its business in said premises for the purposes for which it was formed, we think it cannot be seriously contended under the provision of Art. 1359, supra, that the Nardis corporation prior to its dissolution could not have exercised the option to purchase the leased property. Then, too, Art. 1388 authorizing the directors or managers of the affairs of the dissolved corporation to settle its affairs, collect and pay outstanding debts, divide the surplus, maintain and defend judicial proceedings, and exercise full authority and power of said company over such assets, with unlimited authority in the exercise of discretion for the best interests of all parties interested, it cannot be said that the exercise of such functions prevented their exercising the option to purchase real estate on the ground that such purchase is new business, prohibited by the statute, Art. 1359, supra.

The action of trustees in winding up and liquidating such dissolved corporation has often been referred to by our courts as in nature of an Administration upon the estate of a deceased person, or liquidating agency of a dissolved corporation. McGee v. Ferguson Seed Farms, Tex.Civ.App., 34 S.W.2d 338; Lyon-Gray Lumber Co. v. Gibraltar Life Ins. Co., Tex.Com.App., 269 S.W. 80; 38 Tex.Jur., p. 738, sec. 61. In the last cited authority the author of the text holds:

"An executor or administrator can maintain a suit for specific performance of a contract which his decedent could have enforced, or of one which his predecessor was authorized to make in behalf of the estate. And a suit can be maintained against a personal representative for specific performance of a contract made by his decedent. A contract respecting realty may be specifically enforced against the heirs of the obligor, where they have received the benefit of it. And the heirs of a vendor of realty may be required to warrant the title to the extent of the assets descended from him."

It is settled law, we think, that trustees of a dissolved corporation continue and enjoy all rights in and to the affairs of the corporation they represent, as an administrator, or executor, or liquidating agent would have in and to the estate they represent. If the Nardis company, before its dissolution had the right to enforce the option to purchase, and its trustees had the right to continue occupancy of the premises under the terms and provisions of the lease (the lease not having been cancelled by the lessor) during the entire time ending June 30, 1948, which it has and is doing, then, in reason, the trustees for the corporation had the right to exercise any and all rights and privileges incident to said lease as the corporation had before its dissolution. Its dissolution did not in any way abrogate such rights.

The further points, (2), (3) and (4), raised by appellee to sustain the action of the trial court and pertinent to appellant's points of error, hinge on the dissolution of the corporation and the action of some individual stockholders after the dissolution, which appellee contends was tantamount to an assignment or subletting of the leased premises without the consent of the lessor, in violation of the lease agreement; therefore, vitiated the lease together with the option to purchase the leased premises.

Appellee, over objection of appellant, offered in evidence the following recorded instruments:

On May 1, 1945, prior to the dissolution, Bernard L. Gold, a stockholder, and one Allen Jay Gold filed with the County Clerk of Dallas County an Assumed Name Certificate in compliance with the Acts of the 37th Legislature, showing that they owned and were conducting a business in the firm

name of "Nardis Sportswear" at 409 Browder Street, Dallas, Texas.

On June 1, 1945, Irving Gold, owner and holder of 50 percent of the capital stock of the Nardis corporation, filed in the office of the County Clerk an assignment of one-half of his interest in all the assets of the corporation, together with the name "Nardis Sportswear" and the leasehold or leasehold interest of said corporation, to Shirley Hendel and Hilbert Hendel, trustees of a New York trust.

On June 22, 1947, Bernard L. Gold filed in the Assumed Name Records of Dallas County a certificate showing that he and Shirley and Hilbert Hendel, trustees, were the owners of and conducting a copartnership business at 409 Browder Street, in the name of "Nardis Sportswear."

On September 15, 1945, Isaac Clark, Lois Crawford and Viola Ray filed application with the Secretary of State for a corporate charter in name of "Nardis Sportswear, Inc.," which was granted by the Secretary of State; and on February 7, 1946 the Secretary of State dissolved said corporation.

The uncontroverted testimony of Bernard L. Gold on the points raised is that the purported partnership and new corporation, bearing the name "Nardis Sportswear, Inc.," and "Nardis Sportswear," respectively, never functioned in business; they never purchased any material, manufactured any goods, sold no products or paid any bills. "That Nardis Sportswear has been advertised and has been known as a trademark for garments, and naturally when the corporation had been dissolved, the idea was not to leave it open so somebody could come in and organize Nardis Sportswear and use the label and the good will of the label."

We fail to see the materiality of the aforesaid evidence. The name and good will of a well advertised business concern may be valuable assets to such stockholders wishing to perpetuate the same. Such belong to the stockholders and are by law held in trust by the directors, as trustees of the corporation in which the stockholders were interested. The trustees act for and on behalf of the stockholders and creditors, whoever and wherever they may be, and, the fact that one or more of the stockholders or any creditor may assign his interest, or claim, or debt, such assignment would not affect the right and authority of the trustees to continue handling the affairs of the corporation or to exercise their rights to manage its assets, or to exercise their powers and duties to administer the same for the best interests of all concerned, whoever may be the owner, at the time of final distribution of the surplus assets. The effect of the assignment by Irving Gold, a stockholder, after the dissolution of Nardis Sportswear, Inc., to Shirley and Hilbert Hendel, trustees, is merely the substitution of such purchasers for the seller.

After dissolution of a corporation, the stockholders in law are mere tenants in common of the surplus property and the new co-tenant has the identical rights as those of his grantor; 11 Tex.Jur., p. 139, sec. 473; id., 489, sec. 51; Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81. The assignment of interest works no assignment of the lease resulting in termination of the option to purchase the leased premises by the corporation; nor does the act of individual stockholders in the formation of partnership or corporation in perpetuating the name of the corporation, hinder the trustees from exercising their duties in reference to their trust. "Upon the dissolution of the corporation the property of the corporation became the property of its stockholders in proportion to their respective shares, subject, however, to the rights of the creditors of the corporation whose debts must be satisfied out of the corporate property. * * *" (Citing authorities.) Peurifoy v. Wiebusch, 132 Tex. 36, 117 S.W.2d 773, 775. It may, therefore, be stated that the voluntary dissolution of a corporation under the statute, supra, whose limited corporate existence is extended by law for three years, as here, title to its property vests in the stockholders, encumbered, however, with the statutory rights granted the liquidating trustee over such corporate affairs. Therefore, neither the dissolution of, nor the assignment of interest in the corporation, by individual stockholders, worked a termination of the lease agreement or the corporation's right to purchase the leased

premises. 17 A.L.R., page 534; Perry v. Shaw, 152 Fla. 765, 13 So.2d 811, 147 A.L.R. 352, page 360.

Appellee's fifth counter point to sustain the action of the trial court, pertinent to appellant's points of error, is directed to lack of proof showing that appellee owned the land involved or was in a position to convey it to appellant. The record shows that this contention is raised for the first time in this appeal. Appellee neither alleged his lack of ownership of the land or lack of authority to convey. Appellant's suit is for specific performance of the written contract to convey the land alleged to belong to and in possession of appellee on the date of the contract. The evidence shows that Judge Ogden, Attorney for appellant, examined the abstract of title furnished him by appellee and approved the title as merchantable in Mr. Simmons. There is no pleadings or evidence that Mr. Simmons did not own the land or that he was not in a position to convey same. He testified that the only reason he refused to convey the land to appellant was that "his wife didn't want him to;" and on direct examination by his attorney:

"Q. You say you told Mr. Gold that the present Mrs. Simmons has an interest in that property? A. Well, yes, I presume that I did because she helped me pay for it. It was mortgaged when I married her; she helped me pay for it.

"Q. She put money into the property? A. Her own personal funds went into paying my debts.

"Q. On this property? A. When I married her I owed about $110,000."

We think the above evidence signally failed to show that the wife of appellee had such an interest in the land as to prevent its conveyance by her husband.

We have carefully considered the entire record, the assignments of appellant, countered by those of appellee, and reach the conclusion that the court erred in not instructing a verdict for appellant and entering judgment accordingly; hence it becomes our duty to render such judgment as the trial court should have rendered. Therefore, the judgment of the trial court is reversed and judgment here rendered in favor of appellant for specific performance by appellee of the option agreement conveying the land in suit to appellant with warranty title running against appellee; and, the suggestion having been made by appellee's attorney that pending this appeal appellee has died, hence the judgment shall run against his estate, his heirs, administrators or executors of his estate, to the extent of the assets descended from appellee; and for judgment for appellee, his heirs, or legal representatives for the $75,000 tendered into the court below in consideration for the conveyance of said land to appellant.

Reversed and rendered.

### On Motion for Rehearing.

LOONEY, Justice.

I respectfully dissent from the views of the majority as disclosed in the opinion by Mr. BOND, Chief Justice, delivered on June 25, 1948, believing that the judgment below should have been affirmed, and will state my views as briefly as consistent with a proper understanding of the case. The question presented is one of law arising on undisputed facts which may be gleaned from the opinion of the Chief Justice, but in order to have the facts immediately before us during this discussion they will be restated.

Nardis Sportswear, Inc., the appellant, was a Texas corporation chartered for the purpose of transacting the manufacturing business of making ladies' skirts, robes, and sportswear, and to purchase and sell goods, wares, and merchandise used for such business. The corporation leased from Mr. John J. Simmons, appellee, the real estate involved, as a place to conduct its business, agreeing to pay a monthly rental of $625 for five years, beginning July 1, 1943, and ending June 30, 1948. Appellant was also given an option to purchase the real estate outright for a cash consideration of $75,000. This option could have been exercised at any time during the life of the lease contract. The corporation was dissolved on April 30, 1945, on the consent in writing of all its stockholders, as authorized by 3 Vernon's Ann.Civ.St. subdv. 4 of Art. 1387; and its President, Bernard L. Gold, its Treasurer, Irving Gold, and its Secretary,

Viola Ray, officers and stockholders, became trustees of the creditors and stockholders of the corporation and were given by law power to settle the affairs, collect outstanding debts, and divide money and other property among stockholders after paying the debts of the corporation and reasonable expenses of the administration, as provided in 3 Vernon's Ann.Civ.St. Art. 1388. For the limited purpose of enabling the trustees to settle up the affairs of the corporation, its existence was continued for three years after the dissolution, as provided in 3 Vernon's Ann.Civ.St. Art. 1389.

Prior to its dissolution the corporation had not exercised the option to purchase the real property. However, on December 17, 1945, the trustees sought to exercise the option, and, to that end, Bernard L. Gold, President, in the name of the corporation, so advised Mr. Simmons by letter. Without reciting immaterial matters that supervened after the attempted exercise of the option, suffice it to say the offer to purchase, or the exercise of the option, was rejected by Mr. Simmons and this suit was instituted in the name of the corporation by the trustees for specific performance of the alleged contract. The case was tried to a jury and at conclusion of the evidence each party moved for an instructed verdict. The motion of plaintiff was denied and that of defendant sustained, and on the directed verdict in favor of the defendant, the court rendered judgment in his favor, that the plaintiffs take nothing, etc., from which this appeal was prosecuted.

The only question that I care to discuss, in my opinion the pivotal question on which the decision of this case turns, is: Were these trustees, acting in the name of and for the dissolved corporation, authorized, in the proper settlement and administration of its affairs, to exercise the option to purchase the real estate involved? Or to compel specific performance of the executory contract?

■ There are several valid reasons, in my opinion, why these questions should be answered in the negative. The powers left to a corporation after dissolution, and the scope of the authority of the trustees in winding up its affairs, were well stated by Judge Brewster in McBride v. Clayton, 140 Tex. 71, 166 S.W.2d 125, 128, as follows; he said: "Although the statutes give McBride, Inc., a continued existence for as long as three years after the surrender of its charter, it clearly could not be so continued to purchase and sell goods, wares and merchandise and to transact a general retail mercantile business. Its charter ceased on December 15, 1937, to have any force as such, and McBride, Inc., could derive no power from it, could not engage in retail merchandising under it. Whatever powers remained came by virtue of the statute and only for the specific and limited purposes named therein. Its qualified existence was in the nature of an administration of its estate, with all its corporate rights fixed and determined as of the date of its dissolution. Crease v. Babcock, 23 Pick., Mass., 334, 34 Am.Dec. 61. It was continued only to collect what was due it, to pay what it owed and to distribute what was left of its assets to those entitled to them. Jaffee v. Commissioner of Internal Revenue, 2 Cir., 45 F.2d 679; 13 Am.Jur., sec. 1366, p. 1206; 19 C.J.S., Corporations, § 1743(4), at page 1509. In other words, the powers of its officers had become restricted to those of liquidating agents. 11 Tex.Jur., sec. 470, p. 136." Opinion adopted by the Supreme Court.

■ The power of these trustees is clearly defined in 3 Vernon's Art. 1388, and does not include the power to purchase real estate. After stating that the trustees "shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses," the article concludes as follows: "and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and au-

thority of said company over such assets and property." Thus I think the conclusion inescapable that the dissolved corporation was wholly without power to purchase real estate, or anything else, as it was out of business, and its trustees were not authorized in the winding-up procedure to exercise powers greater than those remaining with the dissolved corporation.

I call attention to 3 Vernon's, Art. 1359, which absolutely prohibits a corporation from purchasing any land "unless the lands so purchased are necessary to enable such corporation to do business in this State, or except where such land is purchased in due course of business to secure the payment of debt." As heretofore stated, the corporation had not exercised the option to purchase the real estate prior to the dissolution; therefore the option remained inchoate, and it was several months after the dissolution that trustees in the name of the corporation sought to exercise the option.

The agreement of Mr. Simmons, called an option, was simply an offer to sell, which, prior to the dissolution, had not been accepted; hence no contract of sale ever came into existence. The limited purposes for which a corporation is authorized to purchase real estate, as stated in the statute quoted above, are: (1) To enable a corporation to do business in this State; or (2) except where such land is purchased in due course of business to secure the payment of debt. It is quite obvious, I think, that the proposed purchase of this land was for neither of such purposes, in that, at the time the trustees attempted to exercise the option, the corporation was dissolved; it was out of business; had no business to conduct, and was incapable of conducting a business; and the attempted purchase was not to secure the payment of a debt; quite to the contrary, the consideration was to be $75,000 in cash taken from the assets of the dissolved corporation.

However, it seems to be seriously contended by appellant that the proposed purchase was authorized, in that same was in due and proper course of administration and settlement of the affairs of the dissolved corporation. In the first place, I think it

appears indisputably from the admissions of appellant that the proposed purchase of the real estate was not for administrative purposes, but a real estate speculation, pure and simple. The purpose of the purchase, as alleged by appellant, was "that in the exercise of their (trustees) right to purchase under said option agreement, they (trustees) considered it was to the best interest of the stockholders and creditors of said company to exercise said option to purchase (the) property outright for the purpose of resale or other disposition thereof rather than to continue to pay the rents thereon up to the termination of the lease." (P. 5, Tr.) And this contention seems to have met with approval by the majority, for there is found in the opinion on file, first paragraph, page 8 [213 S.W.2d 868], where, speaking of the authority of the trustees, the majority opinion states: "they may, in the interest of the corporation or its stockholders, purchase the leased property under an option contained in the lease and then, for such purposes, dispose of the property in any way they see fit."

I cannot subscribe to the correctness of this theory; but, even if it be conceded that the proposed purchase was in due course of administration for winding up the affairs of the corporation, paying its debts, and distributing its remaining assets to its shareholders, still I am of the opinion that such a purchase would have been wholly unauthorized. The decision of the Circuit Court of Appeals in Jackson v. Western Union Telegraph Co., 5 cir., 269 F. 598, 600, was to that effect. In that case the court was construing the identical statutes involved in this case and, among other things, said: "The agreement was an executory one of a private corporation to purchase lands not necessary to enable it to do business in Texas, and it was not one for the purchase of land in due course of business, to secure the payment of debt. It was one to do a thing prohibited by the above set out statute law. The stated exceptions to the explicit prohibition do not include a purchase of land by a corporation for the purpose of winding up its affairs, paying debts, and distributing its assets among its shareholders. * * * The contract was not merely

ultra vires in the proper sense; that is to say, outside the object of the corporation's creation as defined in the law of its organization, but was explicity prohibited by statute. Such a contract is not voidable only, but is wholly void, and of no legal effect." (Citing numerous authorities.)

For the reasons stated, I am not in accord with the decision of the majority. I think it was erroneous, that the motion of appellee for rehearing should be sustained, the former decision of this court set aside, and the judgment of the court below in all respects affirmed.

YOUNG, Justice.

On original submission I concurred in the opinion by Mr. BOND, Chief Justice, and the decision therein announced; that is, reversing the judgment of the trial court and rendering judgment here in favor of appellant, Nardis Sportswear, Inc.

Having reconsidered the case on appellee's motion for rehearing, I have reversed my first conclusion in regard to the matters involved; therefore withdraw my concurrence in the original opinion by Mr. BOND, Chief Justice, and the decision therein announced, and now concur in the dissenting opinion by Associate Justice LOONEY; also in the view expressed in the dissent that appellee's motion for rehearing should be sustained, the former decision of this court set aside, and the judgment of the court below affirmed.

It follows that by my concurrence in the dissenting opinion, it becomes the opinion of this court, and the views expressed therein as to the proper disposition of the case become the order of the court.

It is accordingly ordered that appellee's motion for rehearing be sustained; that the original decision of court be set aside; and the judgment of the trial court affirmed.

BOND, Chief Justice (dissenting).

I respectfully adhere to our original opinion and dissent from the majority setting aside our judgment reversing the judgment of the trial court and rendering judgment for the appellant; motion for rehearing should be overruled.